Approved: _____  **ORIGINAL**
BENJAMIN WOODSIDE SCHRIER
Assistant United States Attorney

Before: HONORABLE ONA T. WANG
United States Magistrate Judge     **21 MAG 11040**
Southern District of New York

- - - - - - - - - - - - - - - - - X
                                  :
UNITED STATES OF AMERICA          :   **COMPLAINT**
                                  :
            - v. -                :   Violations of 18 U.S.C.
                                  :   §§ 1038(a)(1) and 2
GERARDO MANUEL CHECO NUNEZ,       :
                                  :   COUNTY OF OFFENSE:
            Defendant.            :   NEW YORK
                                  :
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

CHAKERA LEAKE, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and a member of the FBI's Joint Terrorism Task Force ("JTTF"), and charges as follows:

### COUNT ONE

### (False Information and Hoaxes)

1. On or about November 17, 2021, in the Southern District of New York and elsewhere, GERARDO MANUEL CHECO NUNEZ, the defendant, knowingly engaged in conduct with intent to convey false and misleading information under circumstances where such information may reasonably be believed and where such information indicated that an activity had taken, was taking, or would take place that would constitute a violation of Title 18, United States Code, Sections 2332a(a) (use of a weapon of mass destruction), 2332f(a) (bombing a place of public use or government facility), and 844(i) (destruction of a building or vehicle by means of explosive), to wit, CHECO NUNEZ conveyed a false bomb threat to FBI personnel at the Jacob K. Javits Federal Office Building in Manhattan, which houses the New York Field Office of the FBI, declaring that he had parked a vehicle containing an improvised

explosive device near the federal building, which triggered a law enforcement response to the threat that included closing multiple blocks in lower Manhattan to vehicle and pedestrian traffic, evacuating an apartment building in that area, conducting aerial surveillance, and deploying a squad of FBI bomb technicians to search CHECO NUNEZ's vehicle for explosive devices.

(Title 18, United States Code, Sections 1038(a)(1) and 2.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

2. I am a Special Agent with the FBI and a member of the FBI's New York-based JTTF, and I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with law enforcement agents and other people, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on my participation in this investigation, including my review of law enforcement and military reports and records, and my conversations with other law enforcement officers and others, as well as my training and experience, I have learned, among other things, that:

a. On or about November 17, 2021, GERARDO MANUEL CHECO NUNEZ, the defendant, and an individual ("Individual-1") later identified as the spouse of CHECO NUNEZ entered the Jacob K. Javits Federal Office Building (the "Javits Building"), located at 26 Federal Plaza in Manhattan, which houses the headquarters of the New York Field Office of the FBI and other federal agencies. In the lobby of the Javits Building, Individual-1 approached a security booth staffed by members of the uniformed security police of the FBI (the "FBI Police"). The security booth is protected by a transparent security screen. Through the security screen, Individual-1 stated to the FBI Police, in sum and substance, that Individual-1 had been the victim of a hack that had resulted in the hackers obtaining a sexually explicit video of Individual-1.

b. Shortly after Individual-1 made the foregoing statement to the FBI Police, CHECO NUNEZ approached the security

booth and slammed against the security screen a copy of a written complaint he had previously filed through the FBI's website alleging, in sum and substance, that a foreign government had hacked his accounts and was trying to extort him. CHECO NUNEZ then stated to the FBI Police, in sum and substance, that he had an improvised explosive device ("IED") in his vehicle ("Vehicle-1"), and that he wanted to turn himself in. The FBI Police asked CHECO NUNEZ, in sum and substance, to confirm that there was an IED in Vehicle-1, and CHECO NUNEZ responded affirmatively. FBI Police took CHECO NUNEZ and Individual-1 into custody, and alerted members of the JTTF.

    c. Members of the JTTF asked CHECO NUNEZ, in sum and substance, if there was an IED in Vehicle-1. CHECO NUNEZ responded, in sum and substance, that there was not an IED in Vehicle-1, and that he had told the FBI Police that there was an IED in Vehicle-1 because the FBI had ignored his hacking complaints, and he wanted the FBI to pay attention to those complaints. CHECO NUNEZ provided a description of Vehicle-1 and its approximate location outside the Javits Building.

    d. Members of the JTTF located Vehicle-1, which is a full-size cargo van. Vehicle-1 was parked on Worth Street near the intersection of Worth Street and Lafayette Street, which is a publicly accessible location approximately across the street from the Javits Building. Vehicle-1 was parked in the immediate vicinity of a closed coffee shop and an apartment building in which numerous individuals live. Law enforcement evacuated the area around Vehicle-1, including the apartment building, and closed the area to pedestrian and vehicle traffic. At least one law enforcement helicopter began surveilling the scene.

    e. FBI bomb technicians searched Vehicle-1 and determined that it did not contain an IED or any other type of explosive device or materials. During the search of Vehicle-1, members of the JTTF found at least approximately several rounds of .223 caliber ammunition. During a subsequent inventory search of Vehicle-1, members of the JTTF found written materials regarding weapons of mass destruction and the detection of IEDs.

    f. After the initial search of Vehicle-1, CHECO NUNEZ signed a written waiver of his *Miranda* rights and agreed to participate in a recorded interview with members of the JTTF. During the interview, CHECO NUNEZ stated, in sum and substance, that he did not possess any explosive devices or materials, and that he had told the FBI Police that there was an IED in Vehicle-1

because the FBI had ignored his hacking complaints, and he wanted the FBI to pay attention to those complaints.

    g. Based on a review of military records, from in or about February 2006 through October 2013, CHECO NUNEZ was enlisted in the United States Marine Corps as an Engineer Equipment Operator and Small Arms Repair Technician, and from in or about January 2017 through September 2021, CHECO NUNEZ was enlisted in the United States Army Reserve.

    WHEREFORE, your deponent respectfully requests that GERARDO MANUEL CHECO NUNEZ, the defendant, be imprisoned, or bailed, as the case may be.

*[Signature]*
Special Agent Chakera Leake
Federal Bureau of Investigation
Joint Terrorism Task Force

Sworn to before me this
18th day of November, 2021

*[Signature]*
HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

4